UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MICHAEL BENANTI,                    )
                                    )
                 Petitioner,        )
                                    )
v.                                  )      Nos.:  3:20-CV-194-TAV-DCP
                                    )             3:15-CR-177-TAV-DCP-1
UNITED STATES OF AMERICA,           )
                                    )
                 Respondent.        )


**MEMORANDUM OPINION**

This action is before the Court on petitioner Michael Benanti's voluminous pro se

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1].[1]  The

government filed a response [Doc. 13], and petitioner filed a reply [Doc. 19].  Additionally,

petitioner's counsel filed a supplemental motion [Doc. 34] and supplemental reply

[Doc. 39] on the *Davis*[2] issue discussed *infra* Part II.G, the sole issue for which the Court

appointed counsel [Doc. 6].

After considering the entire record in this case, the Court finds that seven of

petitioner's § 924(c) convictions must be vacated in light of *Davis*.  With that exception,

the Court finds petitioner's motion entirely meritless.  Accordingly, petitioner's motion

[Doc. 1] will be **GRANTED in part** and **DENIED in part**.

---

[1]  Citations in this opinion refer to petitioner's civil case unless otherwise noted.  *But see infra* note 3.

[2]  *United States v. Davis*, 139 S. Ct. 2319 (2019).

## I.    Background[3]

Between 2014 and 2015, petitioner and codefendant Brian Witham ("Witham") engaged in a conspiracy to rob financial institutions and retail stores [Doc. 197 ¶¶ 29–39]. Petitioner and Witham held employees of these businesses and their families—including young children—at gunpoint and demanded that the employees rob the businesses [*Id.*]. During the offenses, petitioner and Witham wore expensive disguises [*Id.* ¶¶ 33, 36–37] and violently threatened the victims [*Id.* ¶¶ 31, 34, 36; *see also* Doc. 249 pp. 116–17 (noting that petitioner and Witham informed one employee that if he did not complete the robbery within twelve minutes, for "[e]very minute that he was late, they would cut off [his wife's] fingers" and that if he refused to comply, "they would send [his] daughter [to him] . . . in pieces")]. Petitioner served as the "prolific idea guy," formulating complex strategies, and Witham conducted physical labor and surveillance [Doc. 241 pp. 126–27, 216]. Petitioner retained most of the proceeds from the offenses [Doc. 197 ¶¶ 31, 35–36].

On September 3, 2015, officers engaged in a high-speed pursuit of petitioner and Witham, who were driving a stolen Ford Edge [Doc. 246 pp. 104–08]. Ultimately, petitioner and Witham escaped on foot each carrying black bags [*Id.* at 111–13]. Officers obtained from their abandoned vehicle, *inter alia*, a GPS containing historical tracks to 124 Rebel Ridge Road, a North Carolina address coinciding with a rental cabin at Premier

---

[3] Citations in this Part only refer to petitioner's criminal case unless otherwise noted. This opinion presumes familiarity and thus only recounts facts pertinent to petitioner's § 2255 motion.

2

Vacation Rentals, where petitioner and Witham rented a cabin for a period of time [Doc. 87 pp. 119, 143–44, 147].

In November 2015, petitioner and Witham began renting a cabin at 380 Allison Drive in North Carolina (also known as "Southern Comfort"), and law enforcement conducted surveillance of the premises [*Id.* at 149–51]. During this surveillance, officers repeatedly observed two white men and a Nissan Pathfinder with a stolen Maryland license plate [*Id.* at 119, 151].

On November 25, 2015, Trooper Greg Reynolds ("Reynolds") followed the Pathfinder because it had a stolen license plate, and based on Reynolds's personal knowledge and information received from other law enforcement, Reynolds believed its occupants had committed numerous bank robberies and were the assailants in the September 3 chase [*Id.* at 35, 41–44]. In light of this information, Reynolds initiated a traffic stop [*Id.* at 44–46]. Reynolds noticed the Pathfinder stopped slowly and barely pulled onto the shoulder and that petitioner stepped out with a black bag, and Reynolds identified these characteristics as similar to those during the September 3 chase [*Id.* at 48–50; *see* Doc. 88 p. 20]. Reynolds arrested petitioner and officers eventually searched the cabin at 380 Allison Drive where they discovered considerable evidence connecting petitioner and Witham to the robberies, including firearms, surveillance equipment, and numerous disguises containing petitioner's and Witham's DNA [Doc. 238 pp. 99–100; 109–12, 141, 144–46, 164–65; Doc. 239 pp. 41–42].

3

Before trial, petitioner filed motions to suppress evidence, arguing probable cause did not support his arrest and that the search warrant for 380 Allison Drive contained false information and did not sufficiently detail the nexus between the offenses and the cabin [*See* Docs. 58, 65]. Based on Reynolds's testimony and other evidence, the magistrate judge found that petitioner's arrest was supported by probable cause [Doc. 58 pp. 28–35]. The magistrate judge emphasized that Reynolds knew the circumstances of the September 3 chase when he arrested petitioner [*Id.* at 30–31]. Moreover, the magistrate judge applied the collective knowledge doctrine and held that knowledge of Agent Jeff Blanton—who personally had probable cause to believe the occupants of the Pathfinder were the assailants in the September chase—could be imputed to Reynolds because Agent Blanton conferred with Reynolds before he arrested petitioner [*Id.* at 32–35].

Further, the magistrate judge found that probable cause supported the search warrant because several factors linked petitioner and Witham's offenses to the cabin, including that: (1) the offenses involved armed, disguised gunmen who kidnapped employees and their families; (2) the perpetrators forced the employees to rob their employers; (3) the perpetrators held the employees' families hostage while requiring the employees to commit the robberies; (4) the GPS obtained from the September 3 chase had traces to the cabin at 124 Rebel Road, and the owner of that cabin informed officers that its occupants had moved to the cabin at 380 Allison Drive; and (5) the circumstances of the September 3 chase were nearly identical to the circumstances of the November 25 stop [Doc. 65 pp. 6–9]. Furthermore, the magistrate judge held that petitioner did not establish the search warrant

4

affidavit contained false information to support a *Franks*[4] hearing [*Id.* at 19–20]. Petitioner filed objections to the magistrate judge's findings both as to his arrest and the search of the cabin at 380 Allison Drive, but the Court adopted the magistrate judge's findings as is relevant here [Docs. 88, 89], and the Sixth Circuit affirmed the Court's decision [Doc. 275].

At trial, Witham testified against petitioner and confirmed that petitioner and Witham committed the offenses [*See generally* Doc. 241]. Further, the government introduced testimony from dozens of other witnesses as well as physical evidence, including firearms and disguises bearing petitioner's DNA [*See* Docs. 145, 147]. Moreover, over petitioner's objection, the Court allowed introduction of evidence that petitioner "frequented a strip club, cheated on his girlfriend, embezzled from his business, and engaged in fraudulent schemes" [Doc. 275 p. 7]. Petitioner appealed the Court's decision to admit this evidence, and the Sixth Circuit concluded the Court improperly admitted the evidence but that such was a harmless error [*Id.* at 8–9].

Ultimately, the jury convicted petitioner on all counts of the superseding indictment [Doc. 30], that is: (1) conspiracy to commit robbery and extortion in violation of 18 U.S.C. § 1951 (Count One); (2) possession of a firearm in furtherance of the offense in Count One in violation of 18 U.S.C. § 924(c) (Count Two); (3) two counts of attempted bank extortion in violation of 18 U.S.C. § 2113 (Counts Three and Seventeen); (4) bank extortion in violation of 18 U.S.C. § 2113 (Count Ten); (5) three counts of using a firearm in furtherance of the offenses in Counts Three, Ten, and Seventeen in violation of 18 U.S.C.

---

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

5

§ 924(c) (Counts Four, Eleven, and Eighteen); (6) three counts of carjacking in violation of 18 U.S.C. § 2119 (Counts Five, Twelve, and Nineteen); (7) three counts of using a firearm in furtherance of the offenses in Counts Five, Twelve, and Nineteen in violation of 18 U.S.C. § 924(c) (Counts Six, Thirteen, and Twenty); (8) three counts of kidnapping in violation of 18 U.S.C. § 1201 (Counts Seven, Fourteen, and Twenty-one); (9) three counts of using a firearm in furtherance of the offenses in Counts Seven, Fourteen, and Twenty-one in violation of 18 U.S.C. § 924(c) (Counts Eight, Fifteen, and Twenty-two); and (10) three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922 and 924 (Counts Nine, Sixteen, and Twenty-three) [Doc. 143].

After trial, while represented, petitioner filed a motion [Doc. 153] seeking leave to file a pro se motion for a new trial. During a hearing on this motion, petitioner's counsel stated he believed that if petitioner was granted co-counsel status, counsel may have an "inherent conflict of interest" with petitioner because he and petitioner might inevitably disagree as to the best course of action as to petitioner's representation [Doc. 243 pp. 5–6]. Moreover, petitioner's counsel indicated that, accordingly, it would be in petitioner's interests to proceed pro se for purposes of his new trial motion [*See id.*].

Ultimately, the magistrate judge authorized petitioner to file a pro se motion for a new trial after conducting a modified *Faretta*[5] hearing to verify petitioner's pro se representation was knowing and voluntary [*See generally* Docs. 163, 243], and petitioner subsequently filed his pro se motion for a new trial [Doc. 169]. The Court denied

_____

[5] *Faretta v. California*, 422 U.S. 806 (1975).

petitioner's pro se motion and specifically rejected petitioner's arguments that: (1) the search warrant affidavit in the application for a warrant to search 380 Allison Drive contained intentionally or recklessly false information; (2) the government knowingly concealed the possibility that more than two persons were involved in the offenses; and (3) the government improperly bolstered Witham's testimony during trial [*See generally* Doc. 199]. On appeal, the Sixth Circuit affirmed the Court's denial of petitioner's pro se motion for a new trial [Doc. 275; *see also* Doc. 311].

On July 18, 2017, the Court sentenced petitioner as follows: (1) concurrent sentences of life imprisonment as to Counts Three, Seven, Nine, Ten, Fourteen, Sixteen, Seventeen, Twenty-one, and Twenty-three (with Counts Nine, Sixteen, and Twenty-three merged); (2) 240 months of imprisonment as to Count One to be served concurrently with the preceding sentences; (3) 180 months of imprisonment as to Counts Five, Twelve, and Nineteen to be served concurrently with the preceding sentences; (4) 60 months of imprisonment as to Count Two (petitioner's first § 924(c) conviction) and 25 years of imprisonment as to Counts Four, Six, Eleven, Thirteen, Eighteen, and Twenty, all to be served consecutively to each other and the preceding sentences; and (5) sentences of life imprisonment as to Counts Eight, Fifteen, and Twenty-two to run consecutively to each other and the preceding sentences [Doc. 204 pp. 1–3]. As to petitioner's merged felon-in-possession convictions as to Counts Nine, Sixteen, and Twenty-three, the Court applied an enhancement under § 924(e) of the Armed Career Criminal Act ("ACCA")

[*See id.*; *see also* Doc. 197 ¶¶ 87, 121]. Additionally, the Court applied various upward adjustments under the sentencing guidelines [*See, e.g.*, Doc. 197 ¶¶ 66, 70, 72].

Since sentencing, petitioner has filed an overwhelming number of pro se motions, including a § 2255 motion for which the pro se briefing alone easily exceeds 700 pages. In this opinion, the Court addresses petitioner's § 2255 motion [No. 3:20-CV-194 Doc. 1].[6]

## II.    Analysis

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

The petitioner has the burden to prove he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The petitioner "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Particularly, the petitioner must demonstrate a "'fundamental defect' in the proceedings which necessarily results in a complete

_____

[6] The Court addresses petitioner's other motions in contemporaneously-filed orders.

miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citation omitted).

The Court notes that petitioner is acting pro se except for purposes of the *Davis* issue. "It is . . . well-settled that '[t]he allegations of a pro se habeas petition . . . are entitled to a liberal construction . . . .'" *Porter v. Genovese*, 676 F. App'x 428, 440 (6th Cir. 2017) (alteration in original). Therefore, the Court will liberally construe petitioner's motion.

Petitioner's motion raises numerous issues. First, petitioner asserts he is entitled to an evidentiary hearing on his § 2255 motion. Second, petitioner argues his trial and appellate counsel were ineffective. Third, petitioner asserts direct claims for prosecutorial misconduct. Fourth, petitioner challenges an evidentiary determination of the Court during his trial. Fifth, petitioner challenges his § 924(c) convictions under § 403 of the First Step Act. Sixth, petitioner challenges his enhancement under the ACCA in light of *Johnson*.[7] Finally, petitioner challenges seven of his § 924(c) convictions in light of *Davis*.

## A. Evidentiary Hearing

Petitioner requests an evidentiary hearing to determine whether he is entitled to relief and argues there are "critical facts in dispute" [Doc. 1 p. 20; Doc. 2 p. 1]. Petitioner requests that the Court appoint counsel if the Court orders a hearing [Doc. 2 p. 127].

An evidentiary hearing is not required on a § 2255 motion if the motion, files, and record conclusively show that the petitioner is not entitled to relief or if the petitioner's assertions are "contradicted by the record [or] inherently incredible." *Woolsey v. United*

---

[7] *Johnson v. United States*, 576 U.S. 591 (2015).

*States*, 794 F. App'x 469, 474–75 (6th Cir. 2019) (citation omitted); *see* 28 U.S.C. § 2255(b); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

Based on the record and as discussed *infra*, it plainly appears petitioner is entitled to relief insofar as his *Davis* claims are concerned. However, it plainly appears petitioner is not entitled to relief as to his other claims because they are "contradicted by the record [and] inherently incredible." *See Woolsey*, 794 F. App'x at 474–75 (citation omitted). In sum, despite petitioner's conclusory allegations, there are no facts in dispute, and this Court and the Sixth Circuit have repeatedly rejected petitioner's assertions to the contrary. Therefore, the Court finds it is not necessary to hold an evidentiary hearing.

Accordingly, petitioner's request for an evidentiary hearing will be **DENIED** and his request for counsel during such hearing will be **DENIED AS MOOT**.

### B. Ineffective Assistance of Counsel

Petitioner asserts several claims for ineffective assistance of counsel, and these claims are cognizable under § 2255. *See Massaro v. United States*, 538 U.S. 500, 508–09 (2003). A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). First, the petitioner must identify specific acts or omissions to prove that counsel's performance was deficient as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003);

10

*see also Strickland*, 466 U.S. at 689 (providing that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Second, a petitioner must establish "a reasonable probability that, but for [counsel's deficient acts or omissions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Because a petitioner "must satisfy *both* prongs [of *Strickland*], the inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc).

### 1. Counsel's Conduct Regarding Petitioner's Motion to Suppress

Petitioner argues counsel committed errors when preparing for petitioner's motions to suppress. Petitioner's arguments relate to: (1) whether probable cause existed for petitioner's arrest; and (2) whether the warrant application affidavit contained false information and demonstrated probable cause to search 380 Allison Drive.

### a. Probable Cause to Arrest Petitioner

Petitioner argues counsel was ineffective in challenging the constitutionality of petitioner's arrest on November 25, 2015 [Doc. 2 pp. 6–14].

11

First, petitioner suggests the facts supporting petitioner's arrest were primarily that Reynolds saw that the person exiting the vehicle was heavy set, had a bald spot, and held a black bag and that Reynolds considered these facts to be similar to those during the September 3 chase [*Id.* at 6, 8]. And petitioner argues counsel should have objected to this basis because Reynolds arrested petitioner by initiating the stop before he could see petitioner [*See id.* at 6–14].

The Court finds no prejudice because there is no reasonable probability that the result of the proceeding would have been different had counsel made this argument. Ample other evidence supported probable cause even before Reynolds initiated the traffic stop. As the Sixth Circuit stated:

> Benanti argues that . . . when Reynolds arrested him, Reynolds knew only that Benanti had been a passenger in an SUV with stolen plates. But Reynolds knew more than that. His supervisor had just informed him that the two men in the SUV were suspects from the September 3rd chase, and that they were on the road only fifty miles from where the chase had occurred. Moreover, after Reynolds pulled over the SUV, he noticed several similarities to the September 3rd encounter: both involved SUVs with stolen plates; both involved two white men; in both, the SUV stopped momentarily just outside the traffic lane . . . . These common circumstances gave Reynolds ample reason to think that Benanti was the same passenger who had fled from police in the chase on September 3rd.

[No. 3:15-CR-177-1 Doc. 275 p. 5]. Moreover, Reynolds had separate probable cause to initiate the stop based on the fact that the Pathfinder had stolen Maryland plates [*See* No. 3:15-CR-177-1 Doc. 88 p. 22]. Therefore, the Court finds no prejudice and abstains from addressing whether counsel's performance was deficient.

Second, petitioner avers counsel should have argued against the magistrate judge's use of the collective knowledge doctrine because: (1) while Reynolds had permission to

stop the vehicle under the doctrine, he did not have permission to arrest petitioner under the doctrine; and (2) even applying the doctrine, probable cause did not exist because petitioner was not subject to arrest merely because he was in a stolen vehicle [Doc. 2 pp. 9–12, 14].

Regarding petitioner's first argument, the Court finds no prejudice because petitioner is incorrect that the collective knowledge doctrine only applies to traffic stops. *See United States v. Lyons*, 687 F.3d 754, 765–66 (6th Cir. 2012); *see also United States v. Duval*, 742 F.3d 246, 253 (6th Cir. 2014) (search warrant context). Regarding petitioner's second argument, as stated above, the stop was supported by probable cause with or without the doctrine [*see also* No. 3:15-CR-177-1 Doc. 88 pp. 20–23]. Therefore, even assuming counsel had presented these arguments, there is no probability the Court would have ruled for petitioner. Thus, the Court finds no prejudice.

Finally, petitioner provides a conclusory list of alleged acts of ineffective assistance [Doc. 2 p. 14]. This list includes the following: (1) "counsel failed to object to and raise the improper use of evidence"; (2) "counsel failure [sic] to raise prosecutorial misconduct for [failing to object to improper use of evidence]"; (3) "counsel failure [sic] to call witnesses and investigate for [a hearing]"; and (4) "counsel [did] not [investigate and challenge] the contents of the surveillance reports" [*Id.*].

"A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Thomas v. United States*, 849 F.3d 669, 679

13

(6th Cir. 2017) ("[The petitioner] does not articulate how these actions specifically were deficient or how they specifically prejudiced the outcome of the case. Instead, they are tacked on to a list of the failed ineffective assistance of counsel arguments [and therefore are waived].").  Here, petitioner does not explain how any alleged actions of counsel in his list were deficient or how alternative courses of action would have changed the outcome. Thus, petitioner has waived the arguments in the list.

### b.　　　Probable Cause in the Search Warrant Affidavit

Petitioner argues counsel was ineffective in challenging the search warrant affidavit in the government's application for a warrant to search 380 Allison Drive [Doc. 2 pp. 15–53].

First, petitioner argues counsel should have raised the following issues: (1) the affidavit improperly included that the GPS recovered from the September 3 chase had "a track to the address of 124 Rebel Ridge Road" [*Id.* at 16–17]; (2) the affidavit improperly included that "two males placed a deposit on Southern Comfort" because the "affiant knew . . . that only one male rented" the property [*Id.* at 19]; (3) the affidavit improperly included that "a surveillance team had observed a gray Nissan Pathfinder occupied by two white males" because the affiant had not in fact seen two white males [*Id.* at 21–22]; (4) the affidavit improperly included that the officer who conducted the September 3 chase identified Witham because no identification was disclosed during discovery [*Id.* at 22–23];

14

(5) counsel should have requested a *Franks* hearing [*Id.* at 24–25, 29];[8] (6) the nexus between robberies and 380 Allison Drive because the affidavit did not support such a nexus [*Id.* at 32, 36–37, 39, 42–53]; and (7) the officers' unreasonable reliance on the affidavit [*Id.* at 38].

However, the Court and/or the Sixth Circuit have already rejected all of these arguments on the merits [*See generally* No. 3:15-CR-177-1 Docs. 89, 199, 275]. Therefore, the Court finds there is no possibility that counsel further raising these arguments would have changed the outcome. Accordingly, the Court finds no prejudice.

Second, petitioner avers counsel should have argued the following statements should have been included in the warrant affidavit: (1) "[t]he GPS data contained four start and end points . . . in the same general area [as 124 Rebel Road]" [Doc. 2 pp. 17–18]; (2) "[t]he GPS data also contained [a different address] labeled 'home'" [*Id.* at 18]; (3) "Benanti is a resident of [a different address]" [*Id.* at 20–21]; (4) "a date or time frame when the FBI" "found a track to 124 Rebel Road" [*Id.* at 32–33]; (5) "Southern Comfort, the place to be searched, was not the defendants [sic] home" [*Id.* at 33–34]; and (6) "Benanti was not seen at the place to be searched" [*Id.* at 35]. Petitioner argues that under *Franks*, these statements were recklessly or intentionally omitted and that probable cause would have been absent had these statements been in the affidavit [*See id.* at 15].

---

[8] Separately petitioner requests a post-conviction *Franks* hearing to prove the warrant affidavit contained false information. However, petitioner is not entitled to a hearing because, as noted below, the Court and the Sixth Circuit have repeatedly held petitioner cannot show "the offending information [was] essential to the probable cause determination." *See Ajan v. United States*, Nos. 2:02-CR-71, 2:06-CV-24, 2009 WL 1421183, at *11 (E.D. Tenn. May 20, 2009) (citation omitted).

But an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). Accordingly, argument by counsel for the above inclusions would have been rejected and thus would not have changed the outcome. Consequently, the Court finds no prejudice.

Third, petitioner argues counsel erroneously conceded that petitioner rented the cabin at 124 Rebel Road in petitioner's objections to the magistrate judge's findings on petitioner's motion to suppress [Doc. 2 pp. 35, 39]. However, the Court has reviewed the record and concludes counsel never conceded that petitioner rented the cabin. Rather, counsel indicated that the persons who rented the cabin at 124 Rebel Road did not do so until late July; counsel did not, however, actually concede that petitioner and Witham were the persons who rented the cabin [*See* No. 3:15-CR-177-1 Doc. 76 p. 17]. The Court notes petitioner cannot demonstrate prejudice from a concession that never even occurred.[9]

Fourth, petitioner argues counsel improperly conceded the Court could connect the GPS to the cabin at 124 Rebel Road [*Id.* at 35]. However, the Sixth Circuit found probable cause existed independent of this concession [*See generally* No. 3:15-CR-177-1 Doc. 275]. Therefore, the Court finds no prejudice.

---

[9] Petitioner also argues appellate counsel improperly conceded during oral argument that the affidavit stated petitioner was at the cabin at 124 Rebel Road [Doc. 2 p. 35]. The Court summarily rejects this argument because in petitioner's own exhibit, there is a clear dispute whether counsel actually made this concession [*See* Doc. 2-32]. Regardless, even if appellate counsel made this concession, the Court finds such a slight misstatement nonprejudicial given the complete record before the Sixth Circuit, including the affidavit itself. *See United States v. Valentine*, 488 F.3d 325, 338 (6th Cir. 2007) (noting a petitioner is entitled to relief due to an error by appellate counsel only if the error "changed the result of the appeal").

16

Finally, petitioner includes yet two more lists that together provide 33 independent alleged acts of ineffective assistance with absolutely no explanation as to deficiency or prejudice [Doc. 2 pp. 29–31, 53]. As the Court has noted, "[a] party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017). The arguments in these lists are conclusory and undeveloped or otherwise have already been addressed. Moreover, petitioner does not explain how the actions in these lists were deficient or how alternative courses of action would have changed the outcome. Thus, petitioner has waived the arguments in these lists.

### 2. Counsel's Conduct During Trial

The Court now considers petitioner's arguments that trial counsel's assistance was ineffective.

First, petitioner argues counsel should have challenged Witham's testimony that petitioner and Witham's offenses were part of a "two man enterprise" and argued that Witham committed perjury [Doc. 2 p. 67]. Petitioner reasons that the "two man enterprise" theory was the "focal point of the trial" and that Witham's testimony was the only evidence supporting that theory [*Id.*]. Separately, petitioner argues counsel should have conducted further cross-examination or called other witnesses to establish that more than two persons committed the offenses [*See id.* at 67–68].

The Court finds that prejudice does not exist because the evidence overwhelmingly supported the jury's verdict, and therefore, counsel's failure to take the actions petitioner

posits did not affect the outcome of petitioner's trial. Indeed, the government provided not only testimony from dozens of other witnesses but also extensive physical evidence indicating petitioner and Witham committed the offenses, including disguises containing petitioner's DNA and numerous firearms [*See generally* Docs. 145, 147]. Therefore, the Court finds no prejudice.[10]

### 3. Counsel's Conduct Regarding Petitioner's Motion for a New Trial

Petitioner argues counsel was ineffective because petitioner and counsel had a conflict of interest that caused counsel to refuse to file a motion for a new trial for petitioner and thereby forced petitioner to file a pro se motion for a new trial [*See* Doc. 1 p. 16].[11]

---

[10] Petitioner argues counsel should have allowed petitioner to testify at trial. At the outset, petitioner waived this argument by failing to adequately develop it. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017). Even so, the record reflects that petitioner knowingly and voluntarily waived his right to testify by confirming with the Court he was not interested in testifying [*See* No. 3:15-CR-177-1 Doc. 249 pp. 249–51].

Separately, petitioner argues counsel was ineffective because he had a conflict of interest because counsel prevented petitioner from testifying, did not provide sufficient investigation, did not call any witnesses, and did not challenge actions of the prosecution [Doc. 1 p. 16]. The Court summarily rejects these arguments because they are perfunctory and therefore waived or the Court has already rejected these arguments. *See Thomas*, 849 F.3d at 679. And regardless, petitioner has not shown there was "an actual significant conflict" because petitioner does not explain how the alleged conflict caused counsel to "make bad choices for his client." *See United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citation omitted).

[11] Petitioner argues the Court denied him the right to counsel for the same reason [*See* Doc. 2 p. 54]. The Court rejects this argument as the Sixth Circuit held petitioner waived this argument by failing to raise it on appeal [*See* No. 3:15-CR-177-1 Doc. 311 p. 5].

Similarly, the Court rejects petitioner's arguments that the Court failed to consider his Rule 60 motion as an extension of his Rule 33 motion [Doc. 2 p. 54] and that the Court has not already addressed his arguments in that motion [*Id.* at 60–63] because the Court and Sixth Circuit have already rejected these arguments [No. 3:15-CR-177-1 Doc. 311 p. 4. *See generally* Doc. 285].

18

A conflict of interest constitutes ineffective assistance of counsel only if the petitioner demonstrates there was "an actual significant conflict" that caused counsel to "make bad choices for his client." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citation omitted).

The Court finds petitioner has not satisfied this burden. Petitioner demanded that counsel present prosecutorial misconduct claims that counsel felt were inappropriate [No. 3:15-CR-177-1 Doc. 243 p. 3]. When counsel reasonably refused, petitioner agreed to file his motion pro se, and the Court permitted petitioner to do so after conducting a *Faretta* colloquy [*See* No. 3:15-CR-177-1 Docs. 163, 243]. From these facts, the Court concludes no conflict of interest even existed. And even if a conflict existed, the conflict did not cause counsel to make any "bad choices" for petitioner. *See Mays*, 77 F.3d at 908. Indeed, counsel stated he preferred to allow petitioner to proceed pro se because such was in petitioner's best interests [*See* No. 3:15-CR-177-1 Doc. 243 pp. 5–6]. The Court further notes petitioner's decision to file his motion pro se was knowing and voluntary as reflected by his answers during the Court's colloquy [*See generally id.*]. Therefore, the Court finds petitioner has not met his burden to demonstrate ineffective assistance of counsel on this issue.

### 4.    Counsel's Conduct Regarding Sentencing

Petitioner argues counsel should have challenged the Court's application of various provisions of the sentencing guidelines [*See* Doc. 2 p. 118; Doc. 19 p. 25]. First, petitioner argues counsel should have challenged application of U.S.S.G. § 2A4.1(b)(1), which

19

provides an upward adjustment when the offense involves a ransom demand [Doc. 19 p. 25]. *See* U.S.S.G. § 2A4.1(b)(1) (2018). The Court finds petitioner has not met his burden to establish counsel's performance was deficient on this issue because counsel challenged application of this adjustment on other grounds [*See* 3:15-CR-177-1 Doc. 185 pp. 2–3], and petitioner does not explain how counsel's alternative argument was suboptimal. *See Strickland v. Washington*, 466 U.S. 668, 690–91 (1984) ("[S]trategic choices . . . are virtually unchallengeable.").

Second, petitioner argues counsel should have challenged application of the role adjustment under U.S.S.G. § 3B1.1 and the vulnerable victim adjustment under U.S.S.G. § 3A1.1(b)(1) [Doc. 19 p. 25]. *See* U.S.S.G. §§ 3A1.1(b)(1), 3B1.1 (2018). However, petitioner provides no explanation regarding either how his attorney's decision not to challenge these adjustments constituted deficient performance or how there is a reasonable probability that the Court would not have applied the adjustments had counsel challenged them. Regardless, the Court finds no prejudice because the Court properly applied these adjustments based on the full record, which establishes that: (1) petitioner served in a leading role as he directed Witham's actions and received most of the proceeds from his and Witham's offenses; and (2) the crimes involved vulnerable victims as they involved young children [*See* No. 3:15-CR-177-1 Doc. 197 ¶¶ 31, 35–36; Doc. 241 pp. 126–27, 216]. *See United States v. Myree*, 89 F. App'x 565, 566–67 (6th Cir. 2004) (finding the district court properly applied the vulnerable victim adjustment when the offense involved

young children held at gunpoint). Therefore, petitioner has not demonstrated counsel was ineffective for failing to challenge these adjustments.[12]

### 5. Waiver of Undeveloped Claims

At the end of his motion, petitioner provides yet another list containing 49 conclusory grounds for ineffective assistance of counsel [*See* Doc. 2 pp. 119–23]. As with the arguments in petitioner's other lists, every single ground in this final list is either an argument the Court has already addressed or an argument comprised of a single, conclusory sentence stating counsel was ineffective for an undeveloped reason.

With respect to the grounds the Court has already addressed, the Court relies on its already-stated reasoning. With respect to the grounds not already addressed, the Court repeats that "[a] party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017). The Court finds that petitioner waived the undeveloped arguments in this final list because they are conclusory and petitioner provides no explanation as to how each action by counsel was defective or how alternative action could have changed the outcome.

---

[12] Petitioner asserts and the government rebuts that appellate counsel was ineffective for several reasons [*See* Doc. 13 pp. 53–56]. However, the Court sees no need to devote an entire section addressing these arguments. To the extent petitioner challenges appellate counsel's effectiveness on grounds already addressed as to trial counsel, the Court relies on its reasoning as to trial counsel's effectiveness in holding that appellate counsel's representation was not ineffective. Additionally, other than petitioner's argument that appellate counsel was ineffective for making an erroneous concession—which the Court addressed *supra* note 9—petitioner's arguments that are specific to appellate counsel are perfunctory and therefore waived [*See, e.g.*, Doc. 2 p. 31]. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017).

21

### 6. Conclusion as to Ineffective Assistance of Counsel

For the foregoing reasons, petitioner has not demonstrated any action of counsel constituted ineffective assistance. Therefore, all of petitioner's claims for ineffective assistance of counsel will be **DENIED**.

### C. Prosecutorial Misconduct

Petitioner argues counsel for the government committed prosecutorial misconduct for various reasons [Doc. 2 pp. 85–104]. The Court need not discuss these specific arguments because they are procedurally defaulted.

"Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citation omitted). Therefore, with limited exceptions, claims not asserted on direct appeal are procedurally defaulted and therefore may not be asserted via a § 2255 motion. *See Peveler v. United States*, 269 F.3d 693, 698–700 (6th Cir. 2001). However, there are exceptions to procedural default where the petitioner demonstrates "cause and prejudice or actual innocence" as to the underlying charges. *Id.*

The Court finds that petitioner's claims for prosecutorial misconduct are procedurally defaulted and/or were previously litigated and are therefore not subject to the Court's review. *See Lundgren v. Mitchell*, 440 F.3d 754, 777–78 (6th Cir. 2006) (holding prosecutorial misconduct claims were procedurally defaulted when the petitioner failed to present them on direct review). The Court notes that ineffective assistance of counsel did not cause procedural default because, as this Court recognized in a previous order, even

22

petitioner's claims that have not been previously litigated for prosecutorial misconduct are meritless [*See generally* No. 3:15-CR-177-1 Doc. 199].

Consequently, petitioner's prosecutorial misconduct claims will be **DENIED**.

### D.       The Court's Evidentiary Determination

Petitioner next challenges this Court's decision to admit evidence that petitioner "frequented a strip club, cheated on his girlfriend, embezzled from his business, and engaged in fraudulent schemes" [Doc. 2 pp. 106–13]. Petitioner recognizes that the Sixth Circuit found the Court's admission of this evidence was a harmless error [*Id.* at 106–07].

It is axiomatic that this Court is bound by the decisions of the Sixth Circuit. *See Woods v. United States*, Nos. 2:07-CV-232, 2:03-CR-69, 2011 WL 284618, at *12 (E.D. Tenn. Jan. 25, 2011). As petitioner recognizes, the Sixth Circuit held admission of the challenged evidence constituted a harmless error [No. 3:15-CR-177-1 Doc. 275 pp. 7–9]. The Court therefore will not and indeed cannot disrupt that decision.

Therefore, petitioner's evidentiary challenge will be **DENIED**.

### E.       First Step Act § 403

In petitioner's motion to appoint counsel [Doc. 9], petitioner avers his 25-year mandatory consecutive sentences for his § 924(c) convictions are invalid in light of § 403 of the First Step Act. The government responds that § 403 does not apply because petitioner was sentenced before Congress enacted § 403 and § 403 does not apply retroactively [Doc. 13 pp. 55–56, 65].

23

Prior to the First Step Act, § 924(c) required mandatory minimum 25-year consecutive terms where the defendant was convicted under § 924(c) and had at least one other § 924(c) conviction, and even a different § 924(c) conviction in the same prosecution qualified. *United States v. Mackenzie*, No. 3:00-CR-4-DJH-HBB, 2021 WL 4991516, at *2 (W.D. Ky. Oct. 27, 2021). However, after the First Step Act, a 25-year mandatory minimum consecutive sentence for a subsequent § 924(c) conviction applies only if the defendant has a prior § 924(c) conviction in a prior proceeding. *Id.* at *3.

Regardless, only "[d]efendants sentenced after December 21, 2018, may benefit from [§ 403;] defendants sentenced before that date cannot." *United States v. Richardson*, 948 F.3d 733, 748 (6th Cir. 2020); *see also* First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222. Here, the Court sentenced petitioner on July 18, 2017 [No. 3:15-CR-177-1 Doc. 203], well before December 21, 2018. Thus, § 403 provides petitioner no basis for relief.

Therefore, petitioner's § 403 claim will be **DENIED**.

### F.    ACCA Enhancement Claims and *Johnson*

Petitioner argues the Court improperly enhanced his sentence under the ACCA [Doc. 1 p. 14; Doc. 2 pp. 117–18; Doc. 19 pp. 24–25]. Specifically, petitioner argues his prior convictions for robbery and attempted murder are not ACCA predicates in light of *Johnson*, which held that the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutionally vague [Doc. 2 pp. 117–18]. The government argues *Johnson* provides

24

no basis for relief because petitioner was not sentenced under the residual clause [Doc. 13 p. 55].

It is true that the Court enhanced petitioner's sentence under the ACCA as to Counts Nine, Sixteen, and Twenty-three. But it is not clear that the Court relied on the residual clause in imposing these enhancements such that *Johnson* provides a basis for relief. The judgment only indicates the Court sentenced petitioner under § 924(e) [*See* No. 3:15-CR-177-1 Doc 204 p. 2]; it does not specify whether petitioner was sentenced under the residual clause or the still-effective force or enumerated offenses clauses.

A court should address the merits of a petitioner's *Johnson* arguments only "[w]here it is unclear which ACCA clause [the] court relied on to enhance a sentence" and the movant shows "that the sentencing court *might have* relied on the residual clause." *See Chaney v. United States*, 917 F.3d 895, 899–900 (6th Cir. 2019). Where a court sentences a defendant years after a landmark decision such as *Johnson* that renders unconstitutional only a portion of a statute, it can be inferred that the court was aware of that landmark decision and acted in accordance with it. *See United States v. Jones*, No. 2:15-CR-DLB-1, 2016 WL 11212438, at *1, *1 n.1 (E.D. Ky. June 20, 2016) (suggesting the defendant was not entitled to *Johnson* relief because the defendant was sentenced after *Johnson* but addressing the merits only "out of an abundance of caution"); *see also United States v. McElroy*, 673 F. App'x 896, 897 (10th Cir. 2017) (on request for a certificate of appealability, noting that the petitioner's *Johnson* claim was meritless partially because the petitioner was "sentenced after *Johnson*").

25

Here, the Court finds there is no possibility that the Court relied on the residual clause in sentencing petitioner. The Supreme Court decided *Johnson* two years before petitioner's sentencing hearing, and given the importance of *Johnson*, this Court was well aware of *Johnson* when it sentenced petitioner. Thus, petitioner has not shown the Court "*might have*" relied on the residual clause. Therefore, the Court refuses to address the merits of petitioner's claims. *See id.*[13]

Accordingly, petitioner's *Johnson* claims will be **DENIED**.

### G.    Section 924(c) Claims and *Davis*

Petitioner argues his convictions as to Counts Two, Four, Eight, Eleven, Fifteen, Eighteen, and Twenty-two must be vacated in light of *Davis* [Doc. 2 pp. 113–17; Doc. 34]. The government concedes these convictions must be vacated [Doc. 13 pp. 59–66].

Section 924(c) imposes criminal liability upon one who "uses or carries a firearm" "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the

---

[13]    In *Chaney*, the Sixth Circuit held that the petitioner showed that the sentencing court "*might have*" relied on the residual clause primarily because the petitioner had been sentenced *before* (rather than after) *Johnson* and the record was unclear whether the petitioner was convicted under the residual clause or the force clause. *Chaney v. United States*, 917 F.3d 895, 899–900 (6th Cir. 2019). *Chaney* is readily distinguishable because, here, petitioner was sentenced *after* *Johnson*. Moreover, in *Chaney*, the record somewhat supported that the court relied on the residual clause. *Id.*

26

offense." *Id.* § 924(c)(3). In 2019, the Supreme Court decided *Davis*, where it held that § 924(c)(3)(B)'s residual-clause definition for "crime of violence" was unconstitutional. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Thus, after *Davis*, an offense qualifies as a "crime of violence" only if it satisfies the other provisions of § 924(c)(3). *Davis* applies retroactively on collateral review; thus, petitioner's claims are cognizable. *See generally In re Franklin*, 950 F.3d 909 (6th Cir. 2020).

Turning to petitioner's *Davis* claims, petitioner was convicted of Count Two under § 924(c) based on his underlying conviction for conspiracy to commit robbery and extortion in violation of 18 U.S.C. § 1951 in Count One [No. 3:15-CR-177-1 Docs. 30, 204]. The parties recognize that conspiracy to commit robbery and extortion in violation of § 1951 no longer qualifies as a § 924(c) predicate offense after the Sixth Circuit's decision in *United States v. Ledbetter*. 929 F.3d 338, 361 (6th Cir. 2019). Therefore, the Court finds that petitioner's conviction as to Count Two must be vacated.

Additionally, petitioner was convicted of Counts Eight, Fifteen, and Twenty-two under § 924(c) based on his underlying convictions for kidnapping in Counts Seven, Fourteen, and Twenty-one [No. 3:15-CR-177-1 Docs. 30, 204]. The parties recognize that kidnapping no longer qualifies as a § 924(c) predicate offense after the Sixth Circuit's decision in *Knight v. United States*. 936 F.3d 495, 497–98 (6th Cir. 2019). Therefore, the Court finds that petitioner's convictions as to Counts Eight, Fifteen, and Twenty-two must be vacated.

Finally, petitioner was convicted of Counts Four and Eighteen under § 924(c) based on his underlying convictions for attempted armed bank extortion in Counts Three and Seventeen [No. 3:15-CR-177-1 Docs. 30, 204]. Petitioner was further convicted of Count Eleven under § 924(c) based on his underlying conviction for armed bank extortion in Count Ten [No. 3:15-CR-177-1 Docs. 30, 204]. While the parties have some dispute as to petitioner's convictions as to Counts Four, Eleven, and Eighteen, the parties ultimately agree that these convictions must be vacated. Therefore, the Court finds that petitioner's convictions as to Counts Four, Eleven, and Eighteen must be vacated.[14]

---

[14] Petitioner suggests his convictions as to Counts Four, Eleven, and Eighteen were for "bank robbery" under § 2113(a) [*See* Doc. 34 p. 5]. Petitioner argues § 2113(a) "bank robbery" is a single, indivisible offense under the categorical approach that can be accomplished by any one of three listed means: (1) force and violence; (2) intimidation; and (3) extortion [*Id.* at 6–7]. From there, petitioner argues the second variant—bank robbery by intimidation—does not qualify as a "crime of violence" under § 924(c) because it criminalizes merely negligent conduct [*Id.* at 8]. Thus, because petitioner argues that "bank robbery" is indivisible and bank robbery by intimidation is not a "crime of violence," petitioner concludes that "bank robbery" as a whole—even under the first and third variants—does not qualify as a predicate offense [*Id.* at 15].

The government responds that § 2113(a) is a divisible offense and cites cases from other circuits in accord [Doc. 13 pp. 60–61]. Specifically, the government argues that "bank robbery" occurs only by force and violence or by intimidation and that this definition of "bank robbery" under § 2113(a) is divisible from the crime of "bank extortion" under § 2113(a) [*Id.* at 60–61]. The government argues that "bank robbery" under this definition remains a § 924(c) predicate offense after *Davis* [*Id.* at 61–62]. However, the government argues that "bank extortion" as defined is not a § 924(c) predicate. Thus, the government concedes the Court should dismiss the § 924(c) charges because they are based on "bank extortion" rather than "bank robbery" [*Id.* at 62].

Because the parties ultimately agree that petitioner's convictions as to Counts Four, Eleven, and Eighteen must be vacated, the Court will not address the merits of whether "bank extortion" is divisible from "bank robbery" as the government defines them and, if so, whether petitioner's convictions for "bank extortion" as the government defines it constitutes a "crime of violence." *See Allen v. Parker*, 542 F. App'x 435, 436 (6th Cir. 2013) (stating that courts may accept even an unmeritorious concession of the government in the § 2254 context); *see also Maxwell v. United States*, 617 F. App'x 470, 473 (6th Cir. 2015) (same in the § 2255 context).

In light of the foregoing, petitioner's convictions in Counts Two, Four, Eight, Eleven, Fifteen, Eighteen, and Twenty-two will be **VACATED**.

## III. Remedy

As discussed *supra*, petitioner is entitled to relief only insofar as his *Davis* claims are concerned, and therefore, petitioner's convictions as to Counts Two, Four, Eight, Eleven, Fifteen, Eighteen, and Twenty-two must be vacated. While the parties agree these convictions must be vacated, they disagree as to the proper remedy.

The government argues the Court should simply vacate these convictions and corresponding sentences and then correct petitioner's sentence by imposing a sentence with terms essentially identical to those listed in the initial judgment [Doc. 13 pp. 62–64]. Petitioner avers that the Court should vacate petitioner's entire sentence and then resentence petitioner on all counts at a resentencing hearing [Doc. 39]. Petitioner reasons that after the Court vacates seven of petitioner's § 924(c) convictions, he will be guilty of fewer total counts, and this may cause the Court to conclude a lesser sentence is appropriate [*Id.*].

When a court concludes that a petitioner is entitled to § 2255 relief, the court may "resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). "[A] court imposing a corrected sentence will have discretion to impose a corrected sentence based on a brief order, a hearing that resembles a de novo sentencing proceeding, or anything in between" so long as the sentence is reasonable. *United States v. Nichols*, 897 F.3d 729, 738 (6th Cir. 2018). "When the court imposes a

29

corrected sentence that is largely consistent with the rationale of the original sentence, a de novo resentencing would be largely redundant and wasteful." *Id.* If the court corrects a sentence, "the court does no more than mechanically vacate . . . unlawful convictions (and accompanying sentences)." *United States v. Stewart*, No. 1:07CR289-1, 2020 WL 60194, at *2 (N.D. Ohio Jan. 6, 2020) (omission in original) (quoting *United States v. Flack*, 941 F.3d 238, 241 (6th Cir. 2019)).[15]

The Court finds an appropriate remedy is to correct petitioner's sentence without a de novo resentencing and hearing. Petitioner's offenses are extremely serious, involving multiple instances of kidnapping adults and children and holding them at gunpoint. The fact that seven § 924(c) counts must be vacated does not change the severe and violent nature of petitioner's offense conduct. *See Stewart*, 2020 WL 60194, at *3 (correcting the petitioner's sentence rather than resentencing the petitioner where, like here, the petitioner's offenses were "extreme—'something pretty much out of Hollywood'—and warranted a high[] sentence." (citation omitted)). The Court considered in full detail at the initial sentencing hearing the severity of petitioner's offenses and does so again in reaching the conclusion that a corrected sentence is appropriate [*See* No. 3:15-CR-177-1 Docs. 197, 205]. Therefore, the Court finds that correcting petitioner's sentence is "consistent with the rationale of the original sentence [and therefore] a de novo resentencing would be largely redundant and wasteful." *See Nichols*, 897 F.3d at 738.

---

[15] The Court notes that petitioners have no right to a resentencing hearing or allocution. *Pasquarville v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997).

Accordingly, the Court will **DIRECT** the clerk to correct petitioner's sentence as stated in Part IV below.

## IV. Conclusion

For the foregoing reasons, petitioner's 28 U.S.C. § 2255 motion [Doc. 1] and petitioner's counsel's supplemental motion [Doc. 34] will be **GRANTED in part and DENIED in part**. Petitioner's convictions as to Counts Two, Four, Eight, Eleven, Fifteen, Eighteen, and Twenty-two will be **VACATED**. The Clerk will be **DIRECTED** to **CORRECT** petitioner's sentence as follows:

- Petitioner shall retain life sentences as to Counts Three, Seven, Nine, Ten, Fourteen, Sixteen, Seventeen, Twenty-one, and Twenty-three (with Counts Nine, Sixteen, and Twenty-three to be merged) to be served concurrently;

- Petitioner shall retain a sentence of 240 months as to Count One to be served concurrently with the above counts;

- Petitioner shall retain a sentence of 180 months as to Counts Five, Twelve, and Nineteen to run concurrently with each other and the above counts; and

- Petitioner shall be sentenced to a 60-month term of imprisonment as to Count Six and shall retain two 25-year terms of imprisonment as to Counts Thirteen and Twenty, all to be served consecutively to each other and the above counts.

31

Thus, in sum, petitioner's sentence will be corrected to an aggregate term of imprisonment of life in addition to 55 years of imprisonment, which will run consecutively to petitioner's other sentences.

This action will be **DISMISSED**.  The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.  *See* Fed. R. App. P. 24.  Moreover, because petitioner has not made a substantial showing of the denial of a constitutional right and jurists of reason would not dispute the above conclusions, a certificate of appealability **SHALL NOT ISSUE**.  *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A separate order will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

32